[Civ. No. 738.    Third Appellate District.—November 23, 1910.]

THOMAS BROWN, Appellant, v. NORTHERN CALIFORNIA POWER COMPANY, a Corporation, Respondent.

Negligence—Loss by Fire—Nearness of Power Line to Telephone Line—Resetting Telephone Poles—Blowing Over of Telephone Wire in Storm—Pleading.—In an action for alleged negligence of a power company in connecting its power line within three feet of a telephone wire, and in resetting the telephone poles to lean away from the power line, and that owing to their proximity the telephone wire was driven by a storm against the power line, causing the loss of plaintiff's property by fire, the recovery by plaintiff must be lim-

ited to the charges of negligence stated in the complaint. No recovery can be had on any acts of negligence not alleged.

ID.—BURDEN OF PROOF TO SHOW LOSS FROM NEGLIGENCE.—The burden of proof is upon the plaintiff to show that the contact of the two wires which caused the loss was caused by some negligent act or acts alleged in the complaint.

ID.—SUPPORT OF FINDINGS.—Where the trial court found that the fire was caused by the contact of the telephone line with the power line, but was not caused by the proximity of the lines, nor by any wrongful acts or negligence of the defendant, it is held that upon a careful consideration of the evidence the findings of the trial judge are amply supported, and are beyond disturbance by the appellate court.

ID.—PROXIMITY OF LINES — UNDISPUTED FACT — NEGLIGENCE NOT PRESUMED IN LAW.—The mere undisputed fact that the defendant constructed and maintained its power line of twenty thousand volts, which is a much higher voltage than that of the telephone line, within a distance of three feet from the telephone line, does not warrant a presumption of negligence on the part of the defendant *per se,* as matter of law.

ID.—CAUSE OF CONTACT OF WIRES—QUESTION OF FACT—NEGLIGENCE—SUPERHUMAN CAUSE—CONCLUSIVE FINDINGS.—The question of fact which necessarily arises, in view of the proximity of the wires, is as to the cause of the contact between them, whether the actual negligence of the defendant, or an "invisible superhuman cause." The findings upon that question of fact are conclusive that it was not caused by any negligence of defendant in resetting the telephone poles, but was the result of a heavy wind storm in December several months after the completion of the power system, which caused the breaking of a telephone pole and threw the telephone wire against the power line, thus proximately causing the fire.

ID.—ORDER DENYING NEW TRIAL—DISCRETION.—The trial court had discretion to deny a new trial on the ground of insufficiency of the evidence, and where there is evidence which supports its findings, the order denying a new trial must be affirmed.

ID.—VACATION OF ORDER OF SUPREME COURT GRANTING HEARING IN BANK—ABSENCE OF JUDGE FROM STATE.—Where an order granting a hearing in the supreme court, after decision in the district court of appeal depended upon the concurrence of four justices, one of whom was absent from the state when the supreme court made its order, the order granting the rehearing is void, and must be vacated.

APPEAL from an order of the Superior Court of Tehama County denying a new trial.   John F. Ellison, Judge.

The facts are stated in the opinion of the court.

Charles L. Donohoe, and Frank Freeman, for Appellant.

Reid & Dozier, for Respondent.

HART, J.—This is an action for damages for the destruction of certain property by fire, caused, so the complaint alleges, by the negligent acts of the defendant.

The property alleged to have been thus destroyed consisted of a building situated in the town of Orland, Glenn county, and the contents thereof. Said building was the point of terminus of a private telephone line, extending from the town of Germantown, in said Glenn county, to the said town of Orland, along the county road between those two points.

The structure, which it is alleged was destroyed by fire through the negligent acts of defendant, appears to have been occupied at the time of the fire by several different parties as business offices. The complaint sets forth several different and distinct causes of action, alleging damage by the fire to the property of a corresponding number of individuals. The first cause of action stated is in favor of the plaintiff in his individual right, and the remaining counts allege damage to the property of the others, who, it is alleged, assigned their rights of action or claims for damages to plaintiff.

The total amount sued for was $2,729.65. The cause was tried by the court, trial by jury having been waived by both sides.

The findings and judgment are in favor of the defendant.

This appeal is by the plaintiff from the order denying his motion for a new trial.

The only point made by appellant is that the findings, in so far as they are against the claim that the fire was occasioned by the negligent acts and conduct of the defendant, are unjustified and unsustained by the evidence.

The brief of respondent contains the written opinion of the learned trial judge, stating the issues, briefly referring to the evidence, applying the law to the facts as he found them, and setting forth the reasons which led him to the conclusion crystallized into the judgment herein. We approve and here adopt that part of said opinion which reads as follows:

"The cause of action as stated by the plaintiff in the complaint may be summarized as follows:

"1. On the seventh day of December, 1902, and for several years prior thereto, there existed and was in operation a private telephone line, extending from the town of Germantown to the town of Orland. The termination of the telephone line in the town of Orland was in the office of the plaintiff, in a building owned by one J. G. Bender.

"2. That prior to the seventh day of December, 1902, and while said telephone line was in existence, between Germantown and Orland, the defendant erected an electric power line for the purpose of conducting electricity from Shasta county to the town of Willows in Glenn county.

"3. That defendant erected its power line along the same county road, along which the telephone line was then built between Germantown and Orland.

"That the portion of the said power line of defendant, between Orland and Germantown, was erected by the defendant in close proximity to the said telephone line.

"That in the erection of the said power line, the defendant removed, displaced, weakened, destroyed and otherwise tampered with the posts and wires of the telephone line, without the consent and against the wish of the owner thereof.

"4. That by reason of the defendant placing said power line in close proximity to said telephone line, and by reason of the defendant removing, weakening, destroying, displacing and otherwise tampering with the posts and wires of the telephone line, the said telephone line was left in such a condition by defendant that on the seventh day of December, 1902, said telephone line was blown over and came in contact with said power line of defendant between Germantown and Orland.

"That owing to the larger current of electricity contained in said power line than in the telephone line, the current of electricity transmitted to said telephone line from said power line caused the office of plaintiff to take fire, and the said office and the contents thereof were wholly destroyed.

"5. That said fire was entirely due to the negligence and wrongful act of the defendant in placing its power line in close proximity to said telephone line and in weakening, removing, displacing, destroying and tampering with said telephone line.

"The above is the plaintiff's case, as made by the pleadings, and his right to recover must be limited to the charges of negligence made in and by the complaint.

"No recovery can be had on acts of negligence, or upon negligent conduct not alleged, as a defendant in such an action is entitled to know by the pleadings just what he is called on to meet.'

"I have carefully gone over all the evidence and the briefs presented by counsel for the respective parties, and will now endeavor to state my conclusions on the case as made by the pleadings and the evidence.

"I have no doubt whatever that the fire which destroyed plaintiff's property was caused by the telephone wire coming in contact with the wire of the power line, receiving therefrom a large current of electricity, and transmitting it to the building in Orland occupied by the plaintiff.

"It is also clear from the evidence that the wire of the telephone line came in contact with the wire of the power company by reason of the fact that one of the posts of the telephone line was blown over during a storm, carrying the telephone wire against the wire of the power company.

"Does the evidence show that the contact of the two wires was the result of some one or all of the negligent acts of the defendant, alleged in the complaint?

"The burden is upon the plaintiff to show that the contact of the two wires was caused by some negligent act or acts of the defendant, alleged in the complaint.

"The first claim made by the plaintiff is that it was negligence for the defendant to put its posts within three feet of the posts of the telephone line. The evidence shows that the defendant did so place its posts.

"Is it negligence for a power company to place its posts within three feet of a telephone company line?

"There is no law declaring it to be negligence, and the evidence in the case does not make it appear to be a negligent act.

"There is some evidence in the case that after the power line was built, the telephone line did not work as well as it did before, owing to the fact that there was an induced current of electricity from the power line to the telephone line. But this is immaterial to the discussion here, because it is

not claimed that the fire was caused from an induced current of electricity.

"The question here is, Was it negligence to place these two lines so close together, when considered from the standpoint of liability to come in contact?

"Should a reasonably prudent man have anticipated that the two lines, being well and strongly built, were liable to come in contact because placed so close together?

"No evidence has been introduced to show that this is so, and I shall hold that it was not negligence for the defendant to put its power line three feet from the telephone posts.

"The other acts alleged as negligence against the defendant are that in the erection of its power line it removed, displaced, weakened, destroyed and otherwise tampered with the posts and wires of the telephone line without the consent and against the will of the owner thereof.

"It is not a question whether the defendant had the consent of the owner of the telephone line to move and tamper with his wires. That question might be important in an action between the respective owners, but the question here is: Did the defendant, after tampering with the telephone line, leave the power line in a good and safe condition, considering its relationship to surrounding objects, including the telephone poles and wires, or did it leave it, when viewed in relation to all its surroundings, in an unsafe and negligent condition? The evidence shows that the defendant, in constructing its power line, did in some places interfere with the telephone line by removing some posts, causing others to lean toward the east, breaking some in two, and resetting a part, and by moving wires in some places, and I think it appears by a preponderance of the evidence, sufficiently to justify the court in finding, that the defendant did tamper with and to some extent change the position of the posts of the telephone line at or near the point where the post blew over and the two wires came in contact.

"The witness Eggerstedt testifies, that at the time the power line was being built, he saw men working in his field and afterward he noticed that all the posts, for the whole distance of his line, were leaning to the east. The witness Brown testified that the posts along there (the Eggerstedt place) were leaning to the east after the power line went

through. These witnesses did not know the names of the men who did the work or for whom they were working, but as no one else was building a power line there but the defendant, and as the posts were evidently leaned because they were in the way of the power line, and as no one else had any motive for moving them, the court is justified in holding that the defendant changed their positions.

"Conceding, then, that the defendant did tamper with, remove and change the position of the telephone posts near to or at the Eggerstedt place, still there is not evidence that it did not leave them as strong and as securely set in the ground, as they were before.; no evidence that when left by the defendant they had not been well and safely and firmly set in the ground, in a good, careful and workmanlike manner.

"There is evidence, as stated, that after the power line had been built, poles were leaning toward the east, but this is no evidence that they were not properly and firmly set in the ground nor that the defendant had not exercised good care. A pole standing in a slanting position may be as firmly and safely set as one standing perpendicular.

"It was incumbent upon the plaintiff to allege and prove that the defendant, when it built its power line, did not build it in a good, careful, workmanlike manner, and in a manner to make it safe as regards the persons and property of the public; that it did not use due diligence to make it safe, when its position and proximity to the telephone. line was considered; that in moving and tampering with the telephone line it did not set and adjust the telephone poles it interfered with, in a safe, good and workmanlike manner, but reset them in a careless manner and left them in an unsafe condition; or that, having properly set them, it, by a neglect to inspect and repair them, suffered them to get into an unsafe and weakened condition. These things, in my judgment, the plaintiff has not made to appear. By proving that the defendant changed the telephone line and tampered with it, the plaintiff has not proved that the line was left in an unsafe or weakened condition.

"Nor is this a case where, from the fact that a pole blew over in December, we have a right to find that it was left

14 Cal. App.—42

in a weakened and unsafe condition in the preceding spring (or whenever the power line was built).

"For these reasons I am constrained to hold that the plaintiff has not proved that the fire was caused by the defendant's negligence, in the particulars alleged in the complaint."

We have examined the record here with great care, and we have thus been convinced that the findings of the learned trial judge are beyond disturbance by this court. The court found that the fire which destroyed the building and its contents was caused by the contact of the telephone line with the defendant's line, "but that said fire was not caused by reason of the placing of said power line in close proximity to said telephone line, or by reason of the said defendant removing and displacing the posts of the said telephone line, or by reason of the said defendant removing, weakening, destroying, displacing or otherwise tampering with the posts of said telephone line, or by reason of the condition in which said telephone line was left by the defendant, or by reason of any negligent act of the said defendant; that the said fire was not due to any negligence or any wrongful acts of defendant. in placing its power line in close proximity to the telephone line, or by any acts of the defendant."

There is, so far as we are able to determine the question from the bare record, no direct evidence disclosing negligence on the part of the defendant, unless it may correctly be held that the mere fact that the defendant moved the poles of the telephone line into a slanting position from its line, in order, it would seem, to avoid or at least minimize the chance for contact between the two wires, and the further fact that defendant's wire was installed and maintained in rather close proximity to the telephone line, in and of themselves constituted negligence. The court having, as seen, found that the contact between the wires was the cause of the fire, and having further found that the evidence disclosed no negligence in the moving and "tampering with" the telephone poles, with which finding we observe no reason for interference, the question here is narrowed down to the single proposition whether the act of placing the power line at a distance of a little less than three feet from the telephone line constituted, as appellant contends, negligence *per se.* In other words, does the mere undisputed fact that the defendant constructed

and maintained its line, which was of twenty thousand volt power—a much higher voltage than that of the telephone line—within a distance of three feet from the telephone line, warrant the presumption of negligence on the part of the defendant?

No such presumption of law arises upon the proof of that fact. It is obviously true that had these two lines been erected and maintained at a distance from each other of several feet beyond the length of the longest poles of either line, there would and could then have been no contact between the two wires through the falling of the pole or poles of one or the other, but we have been shown no reason for holding that, as a matter of law, there can be any more danger or probability of a telephone or power pole falling merely because situated within three feet of another line of wire transmitting electricity than there would be if the two lines were located five hundred yards or a mile apart, nor, if a pole does fall, that it will fall in the direction of or across or on the other line.

Of course, it will not be denied that the fact that a line of wire for transmitting electricity is located in such close proximity to another line of wire performing like service as were those concerned here would, where the pole of one has fallen on or across the other, the contact of the two wires causing damage, as here, constitute a circumstance which should be considered in the determination of the question whether the falling of the pole was due to the culpable fault or negligence of one or the other of the owners of the two lines, and it might, in a greater or less degree, according to circumstances, tend to prove negligence in the one or the other—that is, it is a circumstance from which, when considered with other pertinent circumstances, negligence might be *inferred.* But this would not be a presumption of law, but only an inference of one fact from another, and, of course, it is for the jury, or, as here, the judge trying the facts, to say how far such circumstance goes toward proving negligence, or whether, with other circumstances, the charge of negligence is sufficiently established. In other words, whether there is danger of damage resulting from the maintenance of a wire of the high voltage of the wire of defendant within a distance of three feet from an ordinary telephone line must depend, as

is shown by the testimony of the experts introduced as witnesses, upon the proposition whether, from any cause, the wires come in contact with each other, and even then, so Wheeler, the defendant's expert, declared, under certain circumstances there would be no danger of resultant damage except at and in the immediate neighborhood of the point of contact. This witness testified: "If twenty thousand volts started at the point of contact, where Dr. Tooley said (Dr. Tooley had testified that early on the morning of December 7, 1902, he saw bright flashes of light emitting from the wires at the point of contact between the towns of Germantown and Orland, and about ten miles from the latter place), on a fourteen wire, ten miles from the building, not over three or four hundred volts would reach the building, as almost the entire original voltage would be lost. Three or four hundred volts would be highly dangerous, due to its kicking effect, but it couldn't set fire. Before it would set fire the wire itself would be burned in two." While the court found, as we have seen, that the fire was caused by the collision between the two wires, contrary to the theory advanced in the latter part of the quoted part of Wheeler's testimony, yet his testimony nevertheless supports the position we take here that, while it is very plain that contact between two wires would necessarily be a more probable event where, as here, they are maintained very near to each other than it would be were the wires maintained a considerable distance apart, in the former case, as well as in the latter, when such contact occurs, the question must necessarily arise as to the cause of such contact—whether it be due to an "irresistible, superhuman cause," or has been occasioned by negligence imputable to either one or the other of the owners of the two lines. Manifestly, this question could only be determined upon evidence explaining how or in what manner the wires came together, and where, as here, it is charged that the damage flowing from such contact is due to the negligence of the owner of one of the lines, the burden of proving such negligence by a preponderance of the evidence is, as the learned trial judge has said, upon the accusing party. The court below has found that this burden has not been sustained by the party upon whom the law has placed it, and, as already indicated by the views which we have expressed with respect to the record

before us, this court is compelled to accept that finding. In other words, we are not able to declare, as a matter of law, that the evidence as disclosed by the record is such as to have entitled the plaintiff to a verdict.

As stated in the opinion filed herein by the trial judge, there is no evidence that defendant, after moving or, as the complaint alleges, "tampering with" the telephone poles, left said poles in an unsafe condition, or did not reset them as firmly in the ground as they were before they were thus disturbed. It does appear from the evidence, as is stated in Judge Ellison's opinion, that the fire occurred several months after the telephone poles had been removed and placed in different positions, and that at the time the contact between the two wires occurred, a heavy wind storm was prevailing and that it was then that one of the posts of the telephone line fell over, causing a contact between the two wires.

That it is the settled rule that whether a motion for a new trial based upon the ground of the insufficiency of the evidence to support the verdict or findings shall be granted or refused rests in the sound discretion of the trial court, is a proposition no one will dispute and which is, in fact, conceded by counsel for the appellant as a matter of course, and where the motion is denied and there is evidence which justifies the verdict or supports the findings, then it is clear that it cannot be said by a court of review that such discretion has been abused or improperly exercised.

For the reasons stated in the foregoing, the order is affirmed.

Chipman, P. J., and Burnett, J., concurred.

On January 16, 1911, an order was filed in the supreme court purporting to transfer the above cause to the supreme court for hearing. Such order was vacated by the supreme court on February 28, 1911, in pursuance of the following opinion and order:

THE COURT.—An order having been filed herein on January 16, 1911, purporting to transfer this cause to the supreme court for hearing and determination, after final judgment thereof in the district court of appeal of the third district, which order was concurred in by only four justices,

namely, Beatty, C. J., Henshaw, J., Shaw, J., and Lorigan, J., and Justice Henshaw being at that time, and from thence continuously until after the time for making such order had expired, out of the state of California, the court is of the opinion that said purported order was and is, by reason of such absence, inoperative and void. (See *People* v. *Ruef,* *ante,* p. 621 [114 Pac. 48], this day decided.) Wherefore, it is ordered by the court that said order be vacated and annulled, and that the papers in said cause be returned to the said district court of appeal.